**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

**UNITED STATES OF AMERICA**                                             **PLAINTIFF**

**VS.**                              **CASE NO. 4:17-CR-293-BSM-45**

**MARCUS O. MILLSAP**                                                     **DEFENDANT**

---

**MEMORANDUM BRIEF IN SUPPORT OF DEFENDANT MARCUS MILLSAP'S
MOTION TO DISMISS SECOND SUPERSEDING INDICTMENT FOR VIOLATION OF
THE INTERSTATE AGREEMENT ON DETAINERS ACT**

---

**I.      INTRODUCTION**

Congress has directed that "[the IADA] shall be liberally construed so as to effectuate its purposes[,]"  18 U.S.C. § APP. 2 ("IADA") § 2 Art. IX, which are "to ensure prompt disposition of outstanding charges in order to implement a prisoner's right to a speedy trial and to prevent interference with his participation in treatment and rehabilitation programs." *Rhodes v. Schoen*, 574 F.2d 968, 969 (8th Cir. 1978).  *See also Gallimore v. State*, 1997 OK CR 46, 944 P.2d 939, 942 (citing *United States v. Mauro,* 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978)) ("[T]he IADA is meant to prevent the government from gaining advantages against a defendant by lodging a detainer against him without assuming the responsibilities arising from that action.").  Judge Siler said it best:

> [T]he purpose of the sanctions against the receiving state (here, the United States) is to assure that it follows up on its filing of a detainer within a specified time so the detainer does not cause the prisoner to be unduly hampered in his rights and privileges. **Thus, once the receiving state files this detainer, it must "put up or shut up,"** to use a cliche; that is, it must follow up with prosecution within 180 days after the detained prisoner has notified the jurisdiction of his request for a final disposition of the charges or suffer the consequences of having the charge dismissed and the detainer lifted.

*United States v. Woods*, 465 F. Supp. 89, 90 (E.D. Ky. 1979), *aff'd*, 621 F.2d 844 (6th Cir. 1980) (emphasis supplied) (citations omitted).

While *Woods* involves the 180-day speedy trial limitation prescribed by Article III of the IADA, its language applies with equal force to the 120-day speedy trial limitation under Article IV. If the Government files a detainer against a prisoner and assumes temporary custody of the prisoner for the purpose of prosecuting him in its jurisdiction, it must "put up or shut up" – that is, the Government must bring the prisoner to trial within 120 days of taking him into custody or suffer the consequences. The IADA is the means by which prisoners may compel the expeditious and orderly disposition of pending charges when the Government itself fails to do so. The Government has violated Defendant Marcus Millsap's right under the IADA to a prompt disposition of these charges, and the indictment against him should be dismissed.

## II.      THE IADA'S PERTINENT STATUTORY TEXT

The pertinent provisions of the IADA read as follows:

FIRST, "[t]he appropriate officer of the jurisdiction in which an untried indictment . . . is pending shall be entitled to have a prisoner against whom he has lodged a detainer and who is serving a term of imprisonment in any party State made available . . . upon presentation of a written request for temporary custody or availability to the appropriate authorities of the State in which the prisoner is incarcerated[.]" IADA § 2 Art. IV(a).

SECOND, "[i]n respect of any proceeding made possible by this article, **trial shall be commenced within one hundred and twenty days of the arrival of the prisoner in the receiving State**, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance." IADA § 2 Art. IV(c) (emphasis supplied). "[I]n the event that an action on the indictment,

information, or complaint on the basis of which the detainer has been lodged is not brought to trial within the period provided in . . . article IV hereof, the appropriate court of the jurisdiction where the indictment, information, or complaint has been pending shall enter an order dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect." IADA § 2 Art. V(c).

AND THIRD, "in a case in which the United States is a receiving State, any order of a court dismissing any indictment, information, or complaint may be with or without prejudice. In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: The seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of the agreement on detainers and on the administration of justice[.]"  IADA § 9 (1).

More succinctly stated, the Court's analysis should be:

FIRST, does Article IV of the IADA apply to Defendant Millsap?

SECOND, since more than 120 days have passed since Defendant Millsap arrived in federal custody, was good cause shown for a continuance in open court with Defendant Millsap or his counsel present?

AND THIRD, if the Government violated the IADA, should the Second Superseding Indictment against Defendant Millsap be dismissed with or without prejudice?

## III.   ARTICLE IV APPLIES TO DEFENDANT MILLSAP.

### A.    Defendant Millsap is serving a term of imprisonment.

The IADA only applies to persons who are subject to a "term of imprisonment."  *U.S. v. Pardue*, 363 F.3d 695, 698 (8th Cir. 2004).  Prior to the return of the Superseding Indictment against Defendant Millsap and others, ECF No. 614, he was serving and continues to serve a term

of imprisonment at the Arkansas Department of Corrections.  This establishes the first element for Article IV of the IADA to apply.

B.    The United States Marshal Service lodged a detainer against Defendant Millsap.

On February 19, 2019, this court entered its Order to Lodge Detainer against Millsap, which directed that "the U.S. Marshal shall file a Detainer with the appropriate custodial authority [in this case, the Arkansas Department of Corrections] which, along with this Order, shall constitute a hold on the above-named Defendant[,]" and further ordered that "upon notification by the custodial authority that arrangements for Defendant's release on the criminal charges have been made, the United States Marshal shall assume custody of and transport [Millsap] to the United States District Court for the Eastern District of Arkansas for further proceedings."  ECF No. 717. The detainer form clearly states that it was filed against Millsap on February 20, 2019.  ECF No. 926-1 at p. 1.  This satisfies the second element for the IADA to apply.

C.    The Government made a written request for temporary custody of Defendant Millsap.

The third and final element that must be established in order for Article IV of the IADA to apply is that there must be a written request for temporary custody.  IADA § 2 Art. IV(c).  On February 14th, 2019, this court issued a writ of habeas corpus ad prosequendum, ordering that the US Marshal retrieve Millsap, bring him before this court for his plea and arraignment, "and after the proceedings have been concluded, that you return MARCUS O. MILLSAP to ARKANSAS DEPARTMENT OF CORRECTION, VARNER UNIT under safe and secure conduct." ECF No. 672.  On February 19th, Millsap appeared for his arraignment.  The Plea and Arraignment Report, ECF No. 716, notes that Millsap reserved his right to a bond hearing and that he would be released to state custody.

On February 21, Magistrate Judge Deere entered an *ex parte* Order directing that Millsap shall remain in the custody of the U.S. Marshal pending trial. ECF No. 739. Both the February 14th writ of habeas corpus ad prosequendum and the February 21st *ex parte* Order constitute "written requests for temporary custody" as defined by the IADA. In the seminal case of the Supreme Court made it clear that, for purposes of deciding what constitutes a "written request for temporary custody," the substance of the request prevails over the form:

> Once the Federal Government lodges a detainer against a prisoner with state prison officials, the Agreement by its express terms becomes applicable and the United States must comply with its provisions. And once a detainer has been lodged, the United States has precipitated the very problems with which the Agreement is concerned. **Because at that point the policies underlying the Agreement are fully implicated, we see no reason to give an unduly restrictive meaning to the term "written request for temporary custody."** It matters not whether the Government presents the prison authorities in the sending State with a piece of paper labeled "request for temporary custody" or with a writ of habeas corpus *ad prosequendum* demanding the prisoner's presence in federal court on a certain day; in either case the United States is able to obtain temporary custody of the prisoner.

*Id*., at 361-62, 98 S.Ct. at 1848 (emphasis supplied).

Consequently, Article IV of the IADA applies to Millsap and the Government was required to commence trial against him within 120 days of his transfer to federal custody. IADA § 2 Art. IV(c).

## IV.  DEFENDANT MILLSAP HAS NOT BEEN TRIED WITHIN THE TIME LIMITS PRESCRIBED BY THE IADA.

A.   The Government has failed to show good cause in open court for the continuances previously granted.

By March 27, 2019, at the latest, the Government and the Court were on notice that Defendant Millsap demanded a speedy trial pursuant to Article IV(c) of the IADA. ECF No. 914 at p. 4-5 ¶ 7(b). As of the filing of this Motion, he has been in federal custody awaiting trial for

395 days.  Having been taken into federal custody on February 18, 2019, the Government was required to commence Millsap's trial within 120 days, (by June 18, 2019) unless **"for good cause shown in open court, the prisoner or his counsel being present,"** the Court granted a "necessary or reasonable" continuance.  IADA § 2 Art. IV(c) (emphasis supplied).  Since Defendant Millsap has made a prima facie showing that the IADA's 120-day period was exceeding in this case, it is the Government's burden to demonstrate either that the various continuances were granted in open court for good cause, that Defendant Millsap was unable to stand trial, or that Defendant Millsap consented to the continuances.  *See Haigler v. United States*, 531 A.2d 1236, 1246 (D.C. 1987), *State ex rel. Hammett v. McKenzie*, 596 S.W. 2d 53, 59 (Mo. Ct. App. 1980); *State v. Pair*, 416 Md. 157, 177 5 A.3d 1090, 1101-02 (2010), *State v. Murphy*, 157 S.W.3d 773, 776-77 (Mo. Ct. App. 2005), *Gallimore v. State*, 1997 OK CR 46, 944 P.2d 939, 945, *State v. Lock*, 839 S.W.2d 436, 444-45 (Tenn. Crim. App. 1992), *State v. Brown*, 157 N.H. 555, 565-66, 953 A.2d 1174, 1183 (2008).

At his plea and arraignment hearing on February 19, 2019, Defendant Millsap's trial date was initially set for March 25, 2019.  ECF No. 716.  Prior to the latest continuance ordered on March 9, 2020, three different orders had been entered continuing his trial date, which are addressed separately below.

### 1.    *March 7, 2019 Order (ECF No. 842)*

On March 7, 2019, the Court entered an Order, on the motion of a codefendant, continuing Defendant Millsap's trial date to October 28, 2019.  ECF No. 842.  Neither Defendant Millsap nor his counsel were present in open court when the continuance was granted, and the Government offered no facts or argument to establish good cause for a continuance.  Therefore, this Order was

ineffective to extend the 120-day period within which the Government had to bring Defendant Millsap to trial.

        2.    *May 24, 2019 Order (ECF No. 1004)*

On May 13, 2019, the Government filed a Motion to determine the applicability of the IADA as to Defendant Millsap, and alternatively, to reset his trial date before June 18, 2019, and schedule a hearing.  ECF No. 984.   A hearing was held on May 24, 2019, and the Court denied the Government's motion to determine the applicability of the IADA as to Defendant Millsap. ECF No. 1004.

Immediately following that ruling, the Government moved to reset the trial date prior to June 18, 2019, and in the same breath moved to continue the trial date from the unspecified setting "before June 18, 2019" back to the October 28, 2019 setting previously scheduled. ECF No. 1009 at 66:05-10.  Defendant Millsap objected.  ECF No. 1009 at 70:18 – 71:03.  After hearing arguments from counsel, the Court granted the Government's motion to set the trial date "before June 18, 2019," and then the Court granted the Government's further motion to continue the trial to October 28, 2019.  ECF No. 1004.

Considering the circumstances, this continuance was purely illusory because the trial date never changed.  The trial was never set for a date certain within the applicable window.  "A request for a continuance assumes that a trial has been scheduled." *Com. v. Gregg*, 470 Pa. 323, 328, 368 A.2d 651, 653 (1977).  Since Defendant Millsap's trial date was never set for a date certain within the applicable window, the Government's request for a continuance was ineffective.  The Government's machinations to feign compliance with the IADA's open court requirement amounted to nothing more than a motion for a *nunc pro tunc* order blessing a decision that had already been made.  However, "[n]unc pro tunc orders are not some Orwellian vehicle for

revisionist history—creating 'facts' that never occurred in fact." *Roman Catholic Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano*, 140 S. Ct. 696, 701 (February 24, 2020) (quoting *United States v. Gillespie*, 666 F.Supp. 1137, 1139 (ND Ill. 1987)).

The Government's motion asked the Court to create a trial date that never really existed for the sole purpose of continuing that trial date. Although the Court offered to clear its calendar and conduct the trial the week following the hearing, that was never really an option because, by the Government's own estimate, it would take several weeks to try its case. *See* ECF No. 716 (6-8 weeks estimated for trial); ECF No. 1135 at p. 8 (Government estimated that case may take 8-12 weeks to complete, depending upon number of defendants who proceed to trial). At bottom, the Government had overlooked the IADA's speedy trial requirements when it lodged a detainer against Defendant Millsap, and the Government's motions were simply its attempt to ask the Court to overlook its error. However, "[i]t is incumbent upon the State, when invoking the IADA, to verify that it is able to timely try the defendant against whom the detainer is being lodged. To find otherwise would be to render useless the time limitations contained within the Act specifically designed to avoid the problem of delay." *Gallimore v. State*, 1997 OK CR 46, 944 P.2d 939, 945; *see also United States v. Polk*, No. 4:05CR00033 JLH, 2007 WL 809820, at *4 (E.D. Ark. Mar. 15, 2007) ("[T]he burden of ensuring compliance with the IADA's provisions nevertheless rested on the United States."). Consequently, the May 24, 2019 Order was ineffective to extend the 120-day period within which the Government had to bring Defendant Millsap to trial.

### 3.    *September 12, 2019 Order (ECF No. 1142)*

Even assuming *arguendo* that the May 24, 2019 continuance satisfied the IADA's requirements, the Government still violated the IADA because the subsequent continuance was not granted in open court with Defendant Millsap or his counsel present.

8

On September 11, 2019, the Government filed its Joint Motion to Continue Jury Trial and Designate the Instant Matter as a Complex Case. ECF No. 1135. However, the Government's Motion recited that Defendant Millsap objected to the continuance. ECF No. 1135 at p. 5 ¶ 16. On September 12, 2019, the Court entered an Order granting the Government's motion to for a continuance and continuing Defendant Millsap's trial date to March 23, 2020. Neither he nor his counsel were present in open court when the continuance was granted. Therefore, this Order was ineffective to extend the 120-day period within which the Government had to bring him to trial.

B.    Defendant Millsap has not been unable to stand trial.

"In determining the duration and expiration dates of the time periods provided in articles III and IV of this agreement, the running of said time periods shall be tolled whenever and for as long as the prisoner is unable to stand trial, as determined by the court having jurisdiction of the matter." IADA § 2 Art. VI(a). The Eighth Circuit interprets the phrase "unable to stand trial" as used in Article VI(a) of the IADA to mean "legally or administratively unavailable." *Young v. Mabry*, 596 F.2d 339 (8th Cir. 1979); s*ee also United States v. Neal,* 564 F.3d 1351, 1354 (8th Cir. 2009)("[*Mabry*] construed 'unable to stand trial' to include the time during which the prisoner was involved in court proceedings in other jurisdictions."). In addition to the time a defendant is legally or administratively unavailable, the Eighth Circuit has also excluded time taken to resolve a defendant's own motion from the IADA's speedy-trial limitation. *See United States v. Winters*, 600 F.3d 963 (8th Cir. 2010) (120-day period tolled from filing of defendant's motion to suppress until conclusion of appellate process directly attributable to that motion). "It is well established among state and federal courts that the statutory language 'unable to stand trial' includes 'all those

periods of delay occasioned by the defendant.'" *Netzley v. Superior Court*, 160 Cal. App. 4th 348, 356, 72 Cal. Rptr. 3d 773, 778 (2008) (citations omitted).[1]

At no point since being received into the Government's custody has Defendant Millsap been involved in court proceedings in other jurisdictions, and even if the time is excluded for the Court to consider his pre-trial motions, more than 120 days have passed since he has been in temporary federal custody.

The undersigned anticipates that the Government will argue that the tolling provisions of the Speedy Trial Act, 18 U.S.C. § 3161(h), should also apply to the IADA. Particularly, the undersigned anticipates that the Government will argue that the 120-day period within which Defendant Millsap must be brought to trial should be tolled for the periods during which any pre-trial motion is pending, including those motions filed by his codefendants or the Government.

In response, Defendant Millsap would assert that, first, there is no Eighth Circuit precedent that uniformly adopts the Speedy Trial Act's tolling provisions as applicable to the IADA. *See, generally, United States v. Collins*, 90 F.3d 1420 (9th Cir. 1996) (discussing divide among circuits to determine whether defendant is "unable to stand trial" within the meaning of the IADA). Second, the IADA serves a separate legislative purpose from the Speedy Trial Act of 1974 and secures a separate right of defendants, such as Defendant Millsap, who are currently incarcerated. *See Rhodes v. Schoen*, *supra* (IADA's basic purpose is "to ensure prompt disposition of outstanding charges in order to implement a prisoner's right to a speedy trial *and to prevent*

---

[1] The court in *Netzley* adopted the same interpretation of "unable to stand trial" as the Eighth Circuit, and that opinion includes a thorough analysis of the distinctions between that interpretation and the interpretations adopted by other circuits.

*interference with his participation in treatment and rehabilitation programs"* (emphasis supplied)).  It would be particularly improper to infer that Congress intended for the Speedy Trial Act's tolling provisions to apply to the IADA, given that the Speedy Trial Act did not even exist when the IADA was enacted in 1970. Third, the rights created by the IADA "are for the benefit of the prisoner[;] [t]hey exist for his protection and are personal to him." *United States v. Polk*, No. 4:05CR00033 JLH, 2007 WL 809820, at *3 (E.D. Ark. Mar. 15, 2007).  If the tolling provisions of the Speedy Trial Act were applied to the IADA, it would permit Defendant Millsap's codefendants and the Government to deprive him entirely of his rights thereunder and render the IADA's speedy trial requirement superfluous.

The Government may protest that disallowing exclusions for delays caused by a codefendant would have the practical effect of requiring severance in most cases where a defendant raises a detainer act claim.  *See United States v. Cephas*, 937 F.2d 816, 821 (2d Cir. 1991).  However, such an argument would ignore the fact that the Government, not Defendant Millsap, is the party that elected to invoke the provisions of the IADA.  "The Government may, if it wishes, forgo lodging a detainer and conduct the federal prosecution free of the Agreement's provisions." *United States v. Roy*, 771 F.2d 54, 59 (2d Cir. 1985) (citing *United States v. Mauro*, 436 U.S. 340, 364 n. 30, 98 S.Ct. 1834, 1849 n. 30 (1978)).  In this case, if the Government did not intend to bring Defendant Millsap and his codefendants to trial within 120 days, it should have obtained his presence by means of a writ of habeas corpus ad prosequendum.  The Government should not now be heard to complain about complying with the requirements of a speedy trial provision that it elected to invoke.  This construction is consistent with Congress's stated intention that the IADA be liberally construed to effectuate its purposes.

11

Since the government has failed to demonstrate good cause for the prior continuances in open court and has further failed to demonstrate that Defendant Millsap was unable to stand trial, the Second Superseding Indictment against him should be dismissed.

## V.      THE INDICTMENT SHOULD BE DISMISSED WITH PREJUDICE.

"A court may dismiss an indictment with or without prejudice when the United States is the receiving state." *United States v. McKinney*, 395 F.3d 837, 840 (8th Cir. 2005) (citing IADA § 9 (1) & (2)). "The court must consider the following factors in deciding whether to dismiss with or without prejudice: (1) the seriousness of the offense; (2) the facts and circumstances leading to the dismissal; and (3) the impact of re-prosecution on the administration of the [IADA] and on the administration of justice." *Id.*

### A.      Seriousness of Offense

The IADA does not specify the criteria for analyzing the seriousness of an offense, but the 8th Circuit Court of Appeals has examined the nature of the conduct charged and the potential sentence. *See McKinney* at 841. "[T]he majority of federal felony offenses are considered serious." *United States v. Parker*, No. WDQ-09-0360, 2011 WL 4632177, at *3 (D. Md. Oct. 3, 2011) (quoting *United States v. Ferreira*, No. 05-cr-0092, 2009 WL 311136 at *9 (E.D. Tenn. Feb. 6, 2009).

Defendant Millsap concedes that the allegations against him are "serious" but would also assert that they are just that: allegations. The IADA does not foreclose this court from considering other factors than the three enumerated by statute. *See* IADA § 9 (1) ("In determining whether to dismiss the case with or without prejudice, the court shall consider, **among others**, each of the following factors . . .") (emphasis supplied). The Court should also consider the strength of the

government's evidence tying him to the alleged conspiracies, which the Defendant contends is particularly weak.

      B.      <u>Facts and Circumstances Leading to Dismissal</u>

On this factor, evidence of bad faith or a pattern of negligence by the Government counsels dismissal with prejudice. *See McKinney* at 841. However, "[t]he condition of the mind is rarely susceptible of direct proof but it depends upon many factors. It may be inferred from outward acts and attending circumstances." *Leffler v. United States*, 409 F.2d 44, 50 (8th Cir. 1969) (quoting *Brennan v. United States*, 240 F.2d 253, 260 (8th Cir. 1957)). From the facts and circumstances of this case, it's reasonable to infer that the Government sought temporary custody of Defendant Millsap for the improper purpose of punishing him before trial, in violation of its own policies and Defendant Millsap's due process rights as a pretrial detainee. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979) (pretrial detainee has a right under the Due Process Clause to be free from punishment before his guilt is adjudicated).

Since being taken into temporary federal custody, Defendant Millsap has been held in administrative segregation at the Pulaski County Regional Detention Facility. *See* <u>Exhibit 1</u> (Classification Paperwork). That's over one year in solitary confinement for 23 hours per day. Pulaski County officials have advised Defendant Millsap that his classification is dictated by the United States Marshal. *See* <u>Exhibit 1</u> at pp. 1-2, 9. The United States Marshal Service's (USMS's) intergovernmental agreement (IGA) with Pulaski County mandates that federal pre-trial detainees shall be housed in a manner that is consistent with federal law and the Federal Performance Based Detention Standards. *See* <u>Exhibit 2</u> (Detention Services IGA) at p. 3; Defendant Millsap's housing classification has violated several of the Federal Performance Based Detention Standards, a copy of which is attached hereto as <u>Exhibit 3</u>. Those violations include, without limitation, that:

- The reason for placing him in restrictive housing has not been clearly articulated, is not supported by objective evidence, and does not serve a specific penological purpose.  <u>Exhibit 3</u> Section E.7.1 at p. 41.

- Correctional staff have not developed a clear plan for him to return to less restrictive conditions as promptly as possible.  <u>Exhibit 3</u> Section E.7.16 at p. 43.

- The classification process has not ensured that he is housed in the least restrictive setting necessary to ensure his own safety, as well as the safety of staff, other detainees, and the public.  <u>Exhibit 3</u> Section G.1.2 at p. 51.

- His stay in administrative segregation for over a year is **more than six times the maximum term of disciplinary segregation permitted for the most serious offense charged**.  <u>Exhibit 3</u> Sections C.8.3 and E.6.2 at pp. 33, 41.

The research is legion documenting the deleterious effects of solitary confinement.  *See* Brief for the Professors and Practitioners of Psychiatry and Psychology as Amicus Curiae, *Hamner v. Burls*, 937 F.3d 1171 (8th Cir. 2019) (concluding that solitary confinement inherently deprives people of essential requirements for human health, inflicting grave harms without need).  These effects are noted in much shorter periods than that which Defendant Millsap has already spent in isolation.  *Id.*, at 4 (citing Stuart Grassian, *Psychopathological Effects of Solitary Confinement*, Am. J. Psychiatry, 140:11 (November 1983)).  "[S]olitary confinement must be limited to very short periods, durations that are measured in hours, days, or weeks, rather than months or years."  *Id.* (quoting Craig Haney, *Restricting the Use of Solitary Confinement*, Ann. Rev. Criminology, 1:285-310, 301 (2018).  The USMS's decision to leave Defendant Millsap in solitary confinement indefinitely without justification and in violation of its own policies is inexplicable.

In the absence of compelling justification, the only reasonable inference for this decision is some bad faith or improper motive. The facts and circumstances here warrant an inference that the coercive force of the federal government is being used to punish Defendant Millsap for maintaining his innocence of a crime for which he has not been convicted.

C.      Impact of Reprosecution

"[T]he focus on this issue should be on whether the prosecution had an improper motive, and whether the violation prejudiced the defendant." *United States v. McKinney*, 395 F.3d 837, 841 (8th Cir. 2005) (quotation marks omitted). For the reasons explained above, the motives of federal investigators and the USMS warrant further scrutiny. The conditions of Defendant Millsap's pretrial confinement represent exactly the types of abuses of the IADA is intended to prevent. Reprosecution would offend the fundamental purpose of the IADA and its administration, and unless the Second Superseding Indictment is dismissed with prejudice, there would be nothing to discourage the Government's agents from perpetrating these same abuses in the future. At a minimum, if the Court decides an IADA violation has occurred, it should conduct a hearing to investigate the basis for Defendant Millsap's disparate treatment.

For the foregoing reasons, the Second Superseding Indictment should be dismissed with prejudice.

[SIGNATURES BLOCKS ON FOLLOWING PAGE]

RESPECTFULLY SUBMITTED,

LAWS LAW FIRM, P.A.
Attorneys for Defendant
P.O. Box 3000
Russellville, AR 72811
Phone: (479) 968-1168

BY:     Hugh R. Laws           Ark. Bar No. 88129
        hlaws@lawslawfirm.com

GIBSON & KEITH, PLLC
Attorneys for Defendant
P.O. Drawer 447
Monticello, AR 71657
Phone: (870) 367-2438
Fax:    (870) 367-8306

BY:     Lee D. Curry           Ark. Bar No. 2014153
        ldc@gibsonkeithlaw.com

16