# United States Court of Appeals
### For the Eighth Circuit
_____

No. 23-2396
_____

United States of America,

*Plaintiff - Appellee*,

v.

Marcus O. Millsap,

*Defendant - Appellant*.
_____

Appeal from United States District Court
for the Eastern District of Arkansas - Central
_____

Submitted: June 11, 2024
Filed: September 3, 2024
_____

Before COLLOTON, Chief Judge, ARNOLD and GRUENDER, Circuit Judges.
_____

COLLOTON, Chief Judge.

A jury found Marcus Millsap guilty of conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act (RICO), aiding and abetting attempted murder in aid of racketeering, and conspiracy to distribute and possess with intent to

distribute 500 grams or more of methamphetamine. The district court[*] sentenced Millsap to life imprisonment. On appeal, Millsap argues that his indictment should have been dismissed because the government violated the Interstate Agreement on Detainers Act. He also contends that the district court erred on several evidentiary issues and should have declared a mistrial based on alleged juror intimidation. If the convictions are upheld, then he challenges his sentence. We conclude that there is no reversible error and affirm the judgment.

I.

Viewing the facts in the light most favorable to the government, Millsap was a friend of Wesley Gullett, the president of the New Aryan Empire. The New Aryan Empire is a white-supremacist organization. When Gullett became the president of the organization, he used its network to traffic methamphetamine. Millsap assisted Gullett with the drug-trafficking operation. He lent Gullett money, facilitated shipment of methamphetamine, and sold methamphetamine.

On one occasion, Millsap sold methamphetamine to Bruce Hurley. Unbeknownst to Millsap, Hurley was a police informant. As a result of Hurley's cooperation with law enforcement, Millsap was charged and convicted of drug-trafficking offenses. *See Millsap v. State*, 488 S.W.3d 559, 561 (Ark. Ct. App. 2016).

Millsap sought to retaliate against Hurley for his cooperation with law enforcement. Millsap offered several people between $10,000 and $50,000 to kill Hurley. Gullett accepted the offer and tried to kill Hurley by gunshot. Before Gullett could shoot Hurley, Hurley shot at Gullett, and Gullett fled. Hurley was later killed by an unknown perpetrator.

---

[*]The Honorable Brian S. Miller, United States District Judge for the Eastern District of Arkansas.

A grand jury charged Millsap with conspiracy to violate RICO, attempted murder in aid of racketeering, and conspiracy to distribute and possess with intent to distribute methamphetamine.  When he was charged, Millsap was in the custody of the Arkansas Department of Correction serving a sentence for the state drug convictions.

At the request of the United States, *see* 18 U.S.C. § 3161(j)(1)(A), a magistrate judge issued a writ of *habeas corpus ad prosequendum* to secure custody of Millsap for his initial appearance in federal court.  On her own initiative, the magistrate judge also issued an Order to Lodge Detainer.  The Marshals Service transferred Millsap to federal custody based on the writ, and he appeared in federal court on February 19, 2019.  After Millsap's initial appearance, the court scheduled a trial date and ordered Millsap detained in federal custody pending trial.  The Marshals Service also transmitted the detainer to the Arkansas Department of Correction, and the detainer was received on February 25—after Millsap was gone.

Shortly before trial, one of Millsap's co-defendants moved for a continuance.  The district court granted the motion and continued the trial for six months.  Millsap moved to dismiss the indictment against him on the ground that commencing the trial six months later would exceed the time limit under the Interstate Agreement on Detainers Act.  The district court denied the motion.  The district court later severed Millsap from his co-defendants, and the case proceeded to a seventeen-day jury trial.

The jury found Millsap guilty on all counts.  The district court calculated an advisory guideline range of life imprisonment and sentenced Millsap to a life term.  Millsap appeals.

II.

A.

Before trial, Millsap moved to dismiss the indictment pursuant to the Interstate Agreement on Detainers Act. The Agreement states, in relevant part, "In respect of any proceeding made possible by this article, trial shall be commenced within one hundred and twenty days of the arrival of the prisoner in the receiving State." 18 U.S.C. App. 2, § 2, art. IV(c). Arkansas and the United States each is a party "State" under the Agreement. *Id.* § 2, art. II(a); *see also United States v. Mauro*, 436 U.S. 340, 362 (1978).

"Once the Federal Government lodges a detainer against a prisoner with state prison officials, the Agreement by its express terms becomes applicable and the United States must comply with its provisions." *Mauro*, 436 U.S. at 361-62. But the Agreement does not apply when the federal government secures custody of a state prisoner through a writ of *habeas corpus ad prosequendum* before a detainer is lodged. *Id.* at 361-62. Millsap argues that his rights under the Agreement were violated because the trial did not commence within 120 days after his detainer was lodged.

We conclude that the Agreement never applied because the federal government did not obtain custody of Millsap with a detainer. Millsap was transferred to federal custody for his initial appearance based on a writ of *habeas corpus ad prosequendum*. Millsap was not returned to state custody because the federal court ordered that he remain in federal custody pending trial. The detainer delivered later to the state authorities thus "served no purpose" and was "meaningless" because Millsap was "already in federal custody pursuant to the writ." *United States v. Woods*, 775 F.2d 1059, 1060-61 (9th Cir. 1985). Under those circumstances, the Agreement does not apply. *Id.* at 1061.

-4-

Millsap relies on *United States v. Roy*, 771 F.2d 54 (2d Cir. 1985), where the court explained that "once [a] detainer is lodged . . . court appearances occurring thereafter are governed by the Agreement, whether such appearances are arranged under the authority of the detainer or a writ." *Id.* at 58-59. In *Roy*, however, the court referred to appearances in federal court by a defendant who was in state custody. The defendant in state custody was arraigned in federal court pursuant to a writ and returned to state custody. Then, after a detainer was lodged against him, the marshals brought the defendant back to federal court for a hearing. That second appearance and subsequent appearances in federal court by the state prisoner were thus governed by the Agreement. By contrast, Millsap was transferred to federal custody under a writ before a detainer was lodged, and he was never returned to state custody. The lodging of the detainer at a later date had no effect. The United States did not acquire custody of Millsap by means of a detainer, so the Agreement did not apply.

B.

Millsap next disputes the district court's ruling that he was not entitled to a mistrial based on alleged juror intimidation. During the trial, two jurors reported feelings of alarm after seeing Millsap's wife outside the courthouse. The jurors reported that Millsap's wife watched them as they walked up the street, and that she then drove away fast in her truck. Some alternate jurors also stated that they saw a "menacing" man one night in the courthouse parking lot. Millsap moved for a mistrial based on juror intimidation, and the district court denied the motion. The court believed that the jurors were trying to follow the judge's admonition to report any concerns to the court, but concluded that there was not a sufficient showing of juror intimidation to justify a mistrial.

In a criminal case, "contact" with a juror "about the matter pending before the jury" is "presumptively prejudicial" to a defendant's right to a fair trial. *Remmer v.*

*United States*, 347 U.S. 227, 229 (1954). Millsap argues that the district court should have applied the *Remmer* presumption and granted his motion.

For the *Remmer* presumption to apply, however, a defendant must make a "threshold showing" of "contacts between the jurors and spectators about the trial itself." *See United States v. Brown*, 923 F.2d 109, 111-12 (8th Cir. 1991). Millsap did not make such a showing. Physical closeness and stares "do not of themselves trigger the *Remmer* presumption." *Id.* at 112. The jurors in this case did not report any communication with spectators or any objectively threatening behavior. The facts are insufficient to show that contact occurred between jurors and spectators about the trial. The district court thus did not abuse its discretion by denying Millsap's motion for a mistrial.

III.

A.

Millsap next challenges the sufficiency of the evidence. We will uphold a defendant's conviction if a reasonable juror, taking the evidence in the light most favorable to the prosecution, could have found the defendant guilty beyond a reasonable doubt. *See United States v. Darden*, 70 F.3d 1507, 1517 (8th Cir. 1995).

The offense of conspiracy to violate RICO requires proof of four elements: (1) a criminal enterprise existed; (2) the enterprise affected interstate commerce; (3) Millsap associated with the enterprise; and (4) Millsap objectively manifested an agreement to participate in the affairs of the enterprise. *Id.* at 1518. Millsap argues that the evidence was insufficient to prove that he associated with the New Aryan Empire's drug-trafficking enterprise or that he knew of its criminal purposes. Several witnesses, however, testified that Millsap helped Gullett and other members of the New Aryan Empire acquire and distribute methamphetamine. Evidence that Millsap

helped obtain and distribute methamphetamine is sufficient to establish his association with the drug-trafficking enterprise and his knowledge of its criminal purposes.

The same evidence was sufficient to support Millsap's conviction for conspiracy to distribute and possess with intent to distribute 500 grams or more of methamphetamine. Millsap argues that the government failed to prove the requisite agreement underlying the alleged conspiracy. *See United States v. Jensen*, 141 F.3d 830, 833 (8th Cir. 1998). A reasonable jury, however, could infer from the concerted conduct of Millsap and Gullett that they had agreed to traffic methamphetamine.

Millsap also maintains that the evidence was insufficient to support his conviction for attempted murder in aid of racketeering. This offense includes four elements: (1) a criminal enterprise existed; (2) the enterprise affected interstate commerce; (3) Millsap aided and abetted attempted first-degree murder; and (4) he aided and abetted attempted first-degree murder "for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity." *See* 18 U.S.C. § 1959(a)(5). Millsap disputes the third and fourth elements involving the attempt.

Millsap argues that the government failed to prove that he took a "substantial step" in furtherance of the crime, *see Proctor v. State*, 79 S.W.3d 370, 385-86 (Ark. 2002), because the government did not prove that he was "the alleged financier" of Hurley's murder. But Gullett told a witness that Millsap offered him $30,000 in exchange for killing Hurley. That evidence was sufficient for the jury to conclude that Millsap agreed to finance Hurley's murder.

Millsap also argues that the evidence was insufficient to show that he committed the offense for the purpose of maintaining or increasing position in the enterprise. The government must show that Millsap acted with this motive, although

-7-

it need not be his sole or principal motive. *United States v. Henley*, 766 F.3d 893, 910 (8th Cir. 2014). Millsap argues that the evidence at most showed that he had a personal gripe against Hurley. Evidence that the defendant "suspected that" the victim was "cooperating with the police and, therefore, posed a potential threat to the enterprise's operations" is sufficient to establish the requisite purpose under § 1959(a). *United States v. Dhinsa*, 243 F.3d 635, 671-72 (2d Cir. 2001). Viewing the evidence in the light most favorable to the government, a jury could infer that Millsap wanted Hurley dead because his cooperation with law enforcement threatened Millsap's participation in the drug operation. Millsap financed the drug operation and asked other members of the drug-trafficking enterprise to kill Hurley. A reasonable jury could conclude that Millsap was motivated by a desire to maintain his position in the drug enterprise.

B.

Millsap argues that the district court erroneously admitted numerous hearsay statements under the rule allowing certain statements by co-conspirators. Statements by a co-conspirator are not hearsay if the statements were made in furtherance of the conspiracy. Fed. R. Evid. 801(d)(2)(E). The district court must determine any preliminary questions, such as the existence of a conspiracy, by a preponderance of the evidence. Fed. R. Evid. 104(a).

Millsap first contends that the district court "never at any point found the existence of any conspiracy by a preponderance of the evidence, let alone that there was any conspiracy specifically between any declarant and Millsap." The district court identified two primary conspiracies: (1) the conspiracy to traffic methamphetamine; and (2) the conspiracy to kill Hurley. At trial, Millsap argued that the government could not prove that any conspiracy existed by a preponderance of the evidence. The district court acknowledged the preponderance standard and found that the government met the standard. The district court's admission of subsequent

-8-

statements by co-conspirators reflected the court's "implicit determination" that Millsap and the declarants were members of the same conspiracy. *United States v. Williams*, 604 F.2d 1102, 1112 (8th Cir. 1979).

Millsap next argues that the district court admitted statements by declarants who were not members of a conspiracy. Two of the declarants pleaded guilty to conspiracy charges arising from the methamphetamine trafficking. The court did not err by concluding that they were members of the drug-trafficking conspiracy.

The statements of the other disputed declarants were not admitted for the truth of the matters asserted, so it was unnecessary to determine that the evidence was admissible as non-hearsay under Rule 801(d)(2)(E). *See* Fed. R. Evid. 801(c). The government offered statements by a member of another white-supremacist group to explain the terminology used by such groups. The government offered another statement to explain one witness's subsequent actions. After that witness was told about an opportunity to steal a truck, he met with Millsap about the truck, and Millsap offered him $50,000 to kill Hurley. The statement about the truck explained why the witness met with Millsap.

Millsap also asserts that the district court admitted statements that did not further any conspiracy because they simply recited past events. We have explained, however, that "statements that describe past events are in furtherance of the conspiracy if they are made to . . . keep co-conspirators abreast of current developments and problems facing the group." *Darden*, 70 F.3d at 1529. Some of the statements that Millsap challenges served this purpose. A co-conspirator's statement about a traffic stop by police kept other members of the drug conspiracy abreast of problems facing the group. Similarly, Gullett's statement about "missing the shot" on Hurley communicated a key development in the conspiracy to kill Hurley.

Other statements that Millsap classifies as mere "recitations of past events" furthered the relevant conspiracy because they were "efforts to recruit other conspirators." *United States v. Gardner*, 447 F.3d 558, 560 (8th Cir. 2006). Gullett's statement to another member of the drug conspiracy that Millsap offered him $30,000 to kill Hurley, and another co-conspirator's clarification that the offer was to *kill* Hurley (rather than just injure him), served to recruit members of the drug conspiracy to join the conspiracy to kill Hurley.

Millsap challenges other statements to no avail. Gullett's statements that he borrowed money from Millsap and sold drugs to him furthered the conspiracy by identifying a co-conspirator's role. *United States v. Sims*, 999 F.3d 547, 552 (8th Cir. 2021). A co-conspirator's statements that the New Aryan Empire would be meeting to discuss a plan to kidnap and assault another police informant concerned future plans for the drug-trafficking conspiracy. *See Darden*, 70 F.3d at 1529. Statements by Gullett and other members of the drug conspiracy about collecting money and firearms concerned day-to-day operations of the drug-trafficking operation.

As for Millsap's remaining hearsay challenges with arguable merit, any error was harmless. *See United States v. Espinoza*, 684 F.3d 766, 781 (8th Cir. 2012). One witness testified that after he was assaulted, his assailants said that they did so because he cooperated with law enforcement against the New Aryan Empire. That statement was corroborated by other witnesses who testified that the New Aryan Empire retaliates against those who cooperate with law enforcement, so the disputed statement had no more than slight influence, if any, on the verdict. Millsap also challenges the admission of messages between a member of the drug conspiracy and his brother. The co-conspirator's brother wrote, "Call me," and the co-conspirator responded, "You gonna be pissed." Even assuming that the brother was not a co-conspirator of Millsap, the cryptic comments would not have influenced the verdict in light of the record as a whole.

C.

Millsap next contends that the district court admitted evidence in violation of Federal Rule of Evidence 403.  Rule 403 allows the district court to exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice.  We will reverse only for an abuse of discretion.  *United States v. Payne*, 119 F.3d 637, 645 (8th Cir. 1997).

Millsap first argues that the district court should have excluded a photograph of his tattoos.  But Millsap stipulated to the photo's admission, so he waived the issue.  Second, he argues that the court should have excluded a photograph of him performing a "Heil Hitler" gesture in jail with a group of other inmates.  The photo was relevant to issues in the case.  At trial, Millsap argued that he did not associate with the New Aryan Empire, but the photo tends to show that he would have been amenable to that affiliation because he associated with a white-supremacist organization in jail.  The court did not abuse its discretion in determining that the probative value of the evidence was not substantially outweighed by the risk of unfair prejudice.

Millsap also argues that testimony about Hurley's subsequent murder should have been excluded.  Hurley would have been a key witness in the trial, and his death and absence presented a dilemma for the district court.  Because the prosecution was unable to call Hurley as a witness, it was appropriate for the court to explain to the jury that Hurley was unavailable.  *See Schumacher v. United States*, 216 F.2d 780, 787-88 (8th Cir. 1954).  The court went further and explained that Hurley had been murdered, but we see no abuse of discretion under the circumstances.  Millsap was on trial for attempting to arrange Hurley's murder.  Leaving Hurley's absence unexplained may have led the jury to speculate about whether Millsap was responsible.  The court opted instead to explain that Hurley had been killed, but to allow evidence that Millsap had not been accused of the murder, and that other people

-11-

wanted Hurley dead. The district court's approach reasonably managed a delicate situation.

IV.

Millsap finally challenges his life sentence. He first argues that the district court erred by applying two increases to his offense level under the advisory sentencing guidelines. We review the district court's application of the sentencing guidelines *de novo* and findings of fact for clear error. *United States v. Savage*, 414 F.3d 964, 966 (8th Cir. 2005).

Millsap challenges a two-level increase for maintaining a premises for the purpose of distributing drugs. *See* USSG § 2D1.1(b)(12). He argues that there was insufficient evidence that he kept drugs in his home to *distribute* them. Millsap's housemate, however, testified that Millsap kept a large quantity of methamphetamine in a five-gallon bucket in their home. Another witness testified that when she and her friend went to Millsap's house to buy methamphetamine, they received the drugs in a five-gallon bucket. The court thus had a sufficient basis to conclude that Millsap kept drugs on his premises to distribute them.

Millsap also challenges a two-level increase for possession of a dangerous weapon in connection with a drug trafficking offense. *See* USSG § 2D1.1(b)(1). This increase "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." *Id.*, comment. (n.11(A)). A witness testified that Millsap gave a handgun to another member of the drug-trafficking conspiracy. This came after the two discussed killing Hurley because he "busted" Millsap. Hurley "busted" Millsap's drug-trafficking operation, and Millsap sought to protect the organization by retaliating, so Millsap's possession of a weapon under these circumstances was connected to the drug-trafficking offense.

-12-

Millsap next argues that the district court erroneously assigned him six criminal history points based on two prior state sentences. Millsap's prior state drug offenses were relevant conduct to the drug-trafficking conspiracy that supported his RICO conviction. Ordinarily, "criminal history points are not assigned to sentences for 'conduct that is part of the instant offense.'" *United States v. Gaye*, 902 F.3d 780, 793 (8th Cir. 2018) (internal quotation omitted). But conduct that is part of a "pattern of racketeering activity" may be assigned points if that conduct resulted in a conviction prior to the last overt act of the instant offense. USSG § 2E1.1, comment. (n.4). Because Millsap's prior state sentences resulted from conduct that formed a pattern of racketeering activity, and resulted from convictions that were sustained before the last overt act of the racketeering conspiracy, the district court did not err in counting the disputed points.

Millsap also contends that the district court failed to reduce his sentence under USSG § 5G1.3(b) to account for time served in state prison on drug offenses that were relevant conduct to the federal conspiracy. He did not raise this objection in the district court, and there was no plain error. Millsap's argument is unavailing because he committed part of the instant RICO conspiracy offense after he was sentenced in state court but while he was released on bond pending appeal. Section 5G1.3(b) is inapplicable when, as here, "the instant offense was committed . . . after sentencing for, but before commencing service of" a term of imprisonment for the state offense. *Id.* § 5G1.3(a).

Millsap contends that the district court abused its discretion by considering Hurley's murder during sentencing. The district court stated, however, that the murder had "nothing to do" with Millsap's sentence. Rather, the court imposed the life sentence because of Millsap's "*requesting* somebody go out and murder a witness." The court properly considered Millsap's offense conduct in fashioning a sentence.

-13-

\*     \*     \*

For these reasons, the judgment of the district court is affirmed. Millsap's request to correct a clerical error in the judgment is denied as moot. *See* R. Docs. 2814-15.

_____

# United States Court of Appeals
*For The Eighth Circuit*
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
**St. Louis, Missouri 63102**

**Maureen W. Gornik**
*Acting Clerk of Court*

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

September 03, 2024

Michael Kiel Kaiser
LASSITER & CASSINELLI
Suite 800
1218 W. Sixth Street
Little Rock, AR  72201-0000

RE:  23-2396  United States v. Marcus Millsap

Dear Counsel:

The court has issued an opinion in this case. Judgment has been entered in accordance with the opinion.

Please review Federal Rules of Appellate Procedure and the Eighth Circuit Rules on post-submission procedure to ensure that any contemplated filing is timely and in compliance with the rules. Note particularly that petitions for rehearing and petitions for rehearing en banc <u>must</u> be received in the clerk's office within 14 days of the date of the entry of judgment. Counsel-filed petitions must be filed electronically in CM/ECF. Paper copies are not required. Except as provided by Rule 25(a)(2)(iii) of the Federal Rules of Appellate Procedure, no grace period for mailing is allowed. Any petition for rehearing or petition for rehearing en banc which is not received within the 14 day period for filing permitted by FRAP 40 may be denied as untimely.

Maureen W. Gornik
Acting Clerk of Court

JMB

Enclosure(s)

cc:     Liza J. Brown
        Kristin Huntington Bryant
        Clerk, U.S. District Court, Eastern District of Arkansas
        Lee Curry
        Stephanie Mazzanti
        Honorable Brian S. Miller
        Marcus O. Millsap

    District Court/Agency Case Number(s):   4:17-cr-00293-BSM-45

# United States Court of Appeals
*For The Eighth Circuit*

Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
**St. Louis, Missouri 63102**

**Maureen W. Gornik**
*Acting Clerk of Court*

**VOICE (314) 244-2400**
**FAX (314) 244-2780**
www.ca8.uscourts.gov

September 03, 2024

West Publishing
Opinions Clerk
610 Opperman Drive
Building D D4-40
Eagan, MN 55123-0000

RE:  23-2396  United States v. Marcus Millsap

Dear Sir or Madam:

A published opinion was filed today in the above case.

Counsel who presented argument and appeared on the brief on behalf of the appellant was Michael Kiel Kaiser, of Little Rock, AR.

Counsel who presented argument and appeared on the brief on behalf of the appellee was Stephanie Mazzanti, AUSA, of Little Rock, AR.

The judge who heard the case in the district court was Honorable Brian S. Miller.

If you have any questions concerning this case, please call this office.

Maureen W. Gornik
Acting Clerk of Court

JMB

Enclosure(s)

cc:  MO Lawyers Weekly

District Court/Agency Case Number(s):  4:17-cr-00293-BSM-45