FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
AT LITTLE ROCK

FEB 2 3 2026

TAMMY H. DOWNS, CLERK
By: _____
DEP CLERK

| | | |
|---|---|---|
| MARCUS O. MILLSAP, | ) | |
| | ) | |
| Movant, | ) | USDC Case No.  4:26-cv-____ |
| | ) | |
| v. | ) | |
| | ) | USDC Case No.  4:17-cr-00293-45 |
| UNITED STATES OF AMERICA, | ) | |
| | ) | Hon. Brian S. Miller |
| Respondent. | ) | United States District Judge |

_____

## *PRO SE* MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VACATE, SET ASIDE OR CORRECT A FEDERAL SENTENCE OR CONVICTION PURSUANT TO 28 U.S.C. §2255

[Return Date to be Fixed by the Court]

COMES NOW MARCUS O. MILLSAP, Movant *pro se,* in the above

styled and numbered cause, and respectfully submits this Memorandum of

Law in support of the Motion to Vacate pursuant to 28 U.S.C. §2255, and

would show the Court the following facts, circumstances, and points of law:

## I. Introduction

Movant, Marcus O. Millsap, challenges the constitutionality of the judgment and sentence imposed against him on the ground that he was denied the effective assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution. Specifically, Mr. Millsap contends that his former counsel rendered professionally deficient performance during the critical plea-bargaining stage of the proceedings, deficiencies that resulted in the rejection of a favorable plea offer and his subsequent conviction following trial.

As set forth in the accompanying Declaration, Mr. Millsap's decision to proceed to trial was not the product of an informed and counseled choice, but rather the result of a systemic failure by counsel to provide competent legal advice. Counsel failed to explain the fundamental nature of one of the charges, and provided affirmatively incorrect advice concerning a purported "appellate safety net" under the Interstate Agreement on Detainers Act ("IADA"), erroneously representing that a violation would guarantee reversal

even in the event of a conviction.

These errors were compounded by counsel's failure to advise Mr. Millsap regarding the admissibility of hearsay and state-case evidence, leaving him to decide whether to proceed to trial or accept a plea offer without the benefit of his attorneys' superior legal training and experience. Had counsel fulfilled their professional obligations—by accurately explaining the charges, providing a realistic assessment of the government's evidence, and offering a clear recommendation regarding the pending Rule 11(c)(1)(C) plea offers—there is a reasonable probability that Mr. Millsap would have accepted the prosecution's fifteen-to-twenty-year plea offer. Accordingly, because Mr. Millsap's Sixth Amendment rights were violated under the standards articulated in *Strickland v. Washington* and *Lafler v. Cooper*, the sentence imposed by this Court must be vacated.

## II. Jurisdiction

Pursuant to 28 U.S.C. §2255, "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, . . . or is otherwise subject to collateral attack, may move the court which imposed sentence to vacate, set aside, or correct sentence." Mr. Millsap so moves this Court on the ground that his convictions were achieved and his sentence was imposed as a result of proceedings wherein he was denied the effective assistance of counsel.

4

## III. Review Standards

A motion for relief under §2255 follows the procedures established by the "Rules Governing Section 2255 Cases in the United States District Courts" ("Rules"). The text of §2255 states that "[u]nless the motion and the files and records of the case **conclusively** show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served on the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."[1] Similarly, the Rules dictate that, upon initial consideration by the assigned District Judge, a §2255 motion should be dismissed only "if it **plainly** appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief."[2] In all other cases, "the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take action the judge may order."[3] The Rules authorize, where appropriate

---

[1]     *28 U.S.C. §2255* (emphasis added).

[2]     *Rule 4(b)* (emphasis added).

[3]     *Id.*

5

and by order of the Court, discovery proceedings, an expansion of the record, and an evidentiary hearing.

Subsequent to the "Preliminary Review" stage set out in Rule 4, the ultimate legal standard for motions brought pursuant to §2255 is prescribed by statute:

> If the court finds that . . . the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant him a new trial or correct the sentence as may appear appropriate.[4]

---

[4] *28 U.S.C. §2255.*

## IV. Grounds for Relief

**A.**    **Ground One**:
**Mr. Millsap was Denied the Effective Assistance of Counsel During the Plea Negotiation Stage and With Respect to the Decision to Plead Guilty or Proceed to Trial.**

### [1].    The Applicable Standard.

Claims of ineffective assistance of counsel must satisfy the two-prong test set out by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d (1984). The performance prong requires a movant to establish that counsel performed outside the wide range of reasonable professional assistance and made errors so serious that he failed to function as the kind of counsel guaranteed by the Sixth Amendment. *Id.* at 687-89. The prejudice prong requires a movant to demonstrate that seriously deficient performance of his counsel prejudiced the defense *Id.* at 687.

The Supreme Court has applied this standard in cases where counsel's ineffective assistance cost the client the benefits of a favorable plea agreement. *Missouri v. Frye*, 566 U.S. 134, 132 S.Ct. 1399, 182 L.Ed.2d 379 (2012); *Lafler v. Cooper*, 566 U.S. 156, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012). In *Frye*, the Court

recognized "[t]he reality is that plea bargains have become so central to the administration of the criminal justice system that defense counsel have responsibilities in the plea bargain process, responsibilities that must be met to render the adequate assistance of counsel that the Sixth Amendment requires in the criminal process at critical stages." *Id.*, 132 S.Ct. 1407. The Court went on to hold "as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Id.*, 132 S.Ct. 1408. Application of that rule led the Court to determine that "[w]hen defense counsel allowed the offer to expire without advising the defendant or allowing him to consider it, defense counsel did not render the effective assistance the Constitution requires." *Id.*

In *Lafler v. Cooper*, the Court explained the proper application of *Strickland*'s prejudice prong to claims that counsel's deficient performance cost her client the benefits of a favorable plea bargain. *Id.*, 132 S.Ct., at 1385-90. To establish prejudice, the Court states "a defendant must show that but for

8

the ineffective advice of counsel there is a reasonable probability that the plea

offer would have been presented to the court (i.e, that the defendant would

have accepted the plea and the prosecution would not have withdrawn it in

light of the intervening circumstances), that the court would have accepted its

terms, and that the conviction or sentence or both, under the offer's terms

would have been less severe than under the judgment and sentence that in

fact were imposed." *Id.*, 132 S.Ct. at 1385. The Court also addressed the

appropriate remedy where ineffective assistance of counsel caused the

rejection of a plea and led to a trial which resulted in a more severe sentence

*Id.*, 132 S.Ct. at 1388-90. In those cases where the sole advantage a defendant

would have received under the plea was a lesser sentence, the Court held that

re-sentencing struck the appropriate balance by "neutralizing the taint" of the

constitutional violation, without granting the defendant a windfall or

needlessly squandering resources of the State *Id.*, 132 S.Ct. at 1388-89. The

Court explained that the trial court's discretion in crafting a remedy should

be guided by "[p]rinciples elaborated over time in decisions of state and

9

federal courts, and in statutes and rules" which offer "more complete

guidance as to the factors that should bear upon the exercise of" such

discretion. *Id.* The Court went on to identify two considerations, as relevant

to selection of a proper remedy:

> First, a court may take account of a defendant's earlier expressed willingness or unwillingness, to accept responsibility for his or her actions. Second, it is not necessary here to decide as a constitutional rule that a judge is required to prescind (that is to say disregard) any information concerning the crime that was discovered after the plea offer was made. The time continuum makes it difficult to restore the defendant and the prosecution to the precise positions they occupied prior to the rejection of the plea offer, but that baseline can be consulted in finding a remedy that does not require the prosecution to incur the expense of conducting a new trial.

*Id.*, 132 S.Ct. at 1389.

## [2].   **Deficient Performance.**

First, counsel failed to explain the fundamental elements of one of the

charges. Counsel did not explain that Mr. Millsap was charged not with

attempted murder, but with aiding and abetting attempted murder in aid of

10

racketeering.[5] Mr. Millsap could not make an informed decision as to whether to proceed to trial or resolve this charge by plea without the information withheld by former counsel.[6]

Second, counsels' performance was deficient because they provided affirmatively incorrect legal advice regarding a purported "safety-net" appellate issue under the Interstate Agreement on Detainers Act ("IADA").[7] Counsel led Mr. Millsap to believe that a violation of the IADA's 120-day deadline would result in the automatic reversal of any conviction on appeal. That advice was legally and factually incorrect because the federal government obtained custody of Mr. Millsap pursuant to a writ of *habeas corpus ad prosequendum*, rather than by filing a detainer; a detainer was filed only later, after Mr. Millsap was already in federal custody—an established exception to the IADA that counsel failed to recognize or explain, despite it

---

[5]     *See Exhibit ("EX") #1, Declaration of Marcus O. Millsap in Support of Motion to Vacate, Set Aside or Correct a Federal Sentence or Conviction Pursuant to 28 U.S.C. §2255, ¶7* [attached to contemporaneously submitted Motion to Expand the Record].

[6]     *See EX #1, ¶8.*

[7]     *See EX #1, ¶5.*

11

having been settled law for decades.[8]

Third, counsel failed to provide a realistic assessment of the evidence and the likelihood that Mr. Millsap would be convicted if he proceeded to trial.[9] Counsel declined to give a clear answer as to whether evidence and convictions from Mr. Millsap's state case would be admissible in federal court.[10] In addition, counsel failed to advise Mr. Millsap that substantial hearsay and double hearsay evidence would be admitted against him, thereby leading him to underestimate the strength of the prosecution's case.[11]

Finally, counsel effectively abandoned their advisory role by failing to

---

[8]    As recognized by the Eighth Circuit in its decision affirming this Honorable Court's denial of Mr. Millsap's motion to dismiss the indictment on IADA grounds. *United States v. Millsap*, 115 F.4th 861, 869-70 (8th Cir. 2024) ("Once the Federal Government lodges a detainer against a prisoner with state prison officials, the Agreement by its express terms becomes applicable and the United States must comply with its provisions." *Mauro*, 436 U.S. at 361-62, 98 S.Ct. 1834. ***But the Agreement does not apply when the federal government secures custody of a state prisoner through a writ of habeas corpus ad prosequendum before a detainer is lodged***. *Id*. at 361-62, 98 S.Ct. 1834." (Emphasis added)).

[9]    *See EX #1, ¶4.*

[10]    *See EX #1, ¶6.* Their deficiency in this respect is emphasized by the reality that they received pre-trial notice of the prosecution's intention to offer such evidence under *Fed.R.Evid. 404(b). See DE #2120.*

[11]    *See EX #1, ¶14.*

make any recommendation regarding the pending Rule 11(c)(1)(C) plea offers.[12] Despite the high stakes and Mr. Millsap's evident stress, counsel never permitted him to review the written plea agreements and offered no professional opinion as to whether the fifteen-to-twenty-year plea offer was in his best interest.[13] Counsel's characterization of the case as a "50/50" proposition — while simultaneously failing to explain the legal elements of the charges or the admissibility of the government's evidence — amounted to a complete failure to provide the professional guidance required by the Sixth Amendment.[14]

Additionally, on belief and information, former counsel may also have failed to accurately convey the terms of the prosecution's formal plea offers

---

[12]    *See EX #1, ¶¶ 4, 9.*

[13]    *See EX #1, ¶¶ 4, 9.* Mr. Millsap's lack of guidance and the absence of meaningful responses from counsel to his questions concerning the plea offers led him to attempt to raise those concerns directly with the Court during the September 2, 2021 status conference. That attempt was abruptly curtailed by his former counsel. *See DE #2790* at 2–7. The transcript further reflects that Mr. Millsap was participating from a remote jail location that was noisy and disruptive, conditions that interfered with his ability to meaningfully participate in the hearing. *See id.* at 29.

[14]    *See EX #1, ¶¶ 4, 6, 7, 8, 14.*

and failed to convey Mr. Millsap's 210-month Rule 11(c)(1)(C) counter-offer. This question should be explored via expansion of the record to include discovery or at an evidentiary hearing at the appropriate point in the § 2255 proceedings.

Counsel's lack of diligence during the plea negotiation stage deprived Mr. Millsap of the right to make an informed decision whether to accept the proposed plea or proceed to trial and fell below the minimal level of competence required of criminal defense counsel by the Sixth Amendment. *See, Hill v. Lockhart,* 474 U.S. 52, 56-57, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).

"[C]riminal justice today is for the most part a system of pleas, not a system of trials." *Lafler v. Cooper,* 132 S.Ct. 1376, 1388 (2012). The decision to plead guilty rests squarely with the defendant, and must be made voluntarily and intelligently because doing so waives important constitutional rights and protections. *Brady v. United States,* 397 U.S. 742, 748 (1970). Defendants are entitled to effective assistance of counsel during this critical process because "an intelligent assessment of the relative advantages of pleading guilty is

frequently impossible without the assistance of an attorney. . . ." *Id.*, at n.6.

A guilty plea entered before presentation of evidence necessarily requires difficult judgments about the strength of the government's case and any available defenses, as well as the potential consequences that could follow either a guilty plea or a jury's conviction. When making this decision, a defendant relies on counsel's informed assessment of the relative benefits and risks of accepting a plea or going to trial. Thus, among counsel's responsibilities during this critical stage is to "supply criminal defendants with necessary and accurate information." *Iaea v. Sunn*, 800 F.2d 861, 865 (9th Cir. 1986).

Where the issue is whether to plead guilty or not, "the attorney has a duty to advise the defendant of the available options and possible consequences" resulting from the decision. *Beckham v. Wainwright*, 639 F.2d 262, 267 (5th Cir. 1980). Implicit in these requirements, is the requirement to provide this information and to convey any plea offers and counter-offers completely, accurately, and in a timely fashion. Failure to do so constitutes

deficient performance within the meaning of the first prong of *Strickland*'s ineffective assistance of counsel test.

### [3].    **Prejudice.**

Mr. Millsap has demonstrated a reasonable probability that, but for counsel's errors, he would have accepted the Rule 11(c)(1)(C) plea offer. His prior history in criminal proceedings supports this conclusion. In every prior state prosecution in Arkansas, Mr. Millsap pleaded guilty because he understood the charges, recognized the evidence against him, and received constitutionally effective assistance of counsel, including advice that pleading guilty was in his best interest.[15]

Mr. Millsap proceeded to trial in this case only because he was deprived of the information necessary to understand the nature of the charges he faced, the strength of the evidence against him, and the fact that he did not possess a viable appellate "safety net," and because he was not advised that accepting the plea offer was in his best interest.[16] Had counsel explained the nature of

---

[15]    *See EX #1, ¶13; DE #2119-1; Millsap v. State,* 488 S.W.3d 559 (2016).

[16]    *See EX #1, ¶11.*

the racketeering charge and the admissibility of hearsay and state-case evidence, Mr. Millsap would have accepted the prosecution's plea offer.[17]

The record further supports the probability that Mr. Millsap would have accepted the plea offer based on his own actions during the pretrial phase. Even while operating under significant stress and without adequate professional guidance, Mr. Millsap expressed a willingness to accept a sentence of 210 months[18]— squarely within the prosecution's purported "final" Rule 11(c)(1)(C) offer of fifteen to twenty years (180 to 240 months). His counter-proposal was not a rejection of the plea framework, but rather a response made in the absence of informed legal advice. Mr. Millsap has expressly declared that, had counsel provided a meaningful recommendation that the fifteen-to-twenty-year offer was in his best interest, he would have accepted it instead of proceeding to trial.[19]

---

[17]    *See EX #1, ¶¶ 12, 13, 14.*

[18]    *See EX #1, ¶10.*

[19]    *See EX #1 ¶11.*

Finally, the sentencing disparity in this case is stark and independently satisfies the requirement that acceptance of the plea would have resulted in a less severe sentence. The prosecution's purported "final" Rule 11(c)(1)(C) offer capped Mr. Millsap's sentence at twenty years, whereas proceeding to trial—under the mistaken belief that he had a "50/50" chance of acquittal and a nonexistent IADA "safety net"—exposed him to, and ultimately resulted in, a sentence of life imprisonment. Because Mr. Millsap would have pleaded guilty to avoid that exposure had he been properly advised, and because the court would likely have accepted a plea agreement within the range proposed by the parties, the prejudice standard articulated in *Lafler v. Cooper* is fully satisfied.

### [4].  <u>Remedy</u>.

Mr. Millsap was deprived of the sentencing benefits of accepting the prosecution's plea offer as a direct result of ineffective assistance of counsel. Accordingly, principles of justice require that Mr. Millsap be placed in the position he would have occupied had he received constitutionally effective

advice—namely, resentencing as if he had accepted the plea offer.

Title 28 U.S.C. § 2255 provides that where "the sentence imposed was not authorized by law or otherwise open to collateral attack," the court shall "vacate and set the judgment aside" and may, among other remedies, "resentence" the defendant. *28 U.S.C. § 2255(b)*. Thus, this Court possesses clear authority to vacate Mr. Millsap's sentence and resentence him under the terms of the government's Rule 11(c)(1)(C) plea offer. *See Andrews v. United States*, 373 U.S. 334, 339–40 (1963) (explaining that § 2255 relief does not require the defendant's release, but expressly authorizes vacatur of the sentence and return of the defendant to the district court for resentencing proceedings).

At a minimum, Mr. Millsap is entitled to resentencing as if he had accepted the fifteen to twenty-year Rule 11(c)(1)(C) plea agreement, with appropriate credit for time served on the related state case. Depending on the factual findings made during these proceedings, Mr. Millsap may be entitled to resentencing to a term of 210 months' imprisonment, likewise with credit

for time served on the related state case.

## V. Prayer for Relief

Mr. Millsap was deprived of rights guaranteed by the Sixth Amendment to the United States Constitution during the plea-negotiation stage and in connection with the decision whether to plead guilty or proceed to trial. He now seeks to vindicate those rights before this Court. Mr. Millsap has established his entitlement to relief and respectfully requests that the Court vacate his sentence and resentence him pursuant to the Rule 11(c)(1)(C) plea agreement that was lost as a result of counsel's ineffective assistance.

Respectfully submitted, this _____ day of February, 2026.

_____

Mr. Marcus O. Millsap, *Pro Se*
Reg. No. 32531-009
USP Coleman I
P.O. Box 1033
Coleman, FL 33521

20

## VI. Verification

I, Marcus O. Millsap, verify under penalty of perjury, pursuant to 28 U.S.C. §1746 that the foregoing is true and correct. Executed this $\underline{18}^{TH}$ day of February, 2026.

Mr. Marcus O. Millsap, *Pro Se*
Reg. No.  32531-009
USP Coleman I
P.O. Box 1033
Coleman, FL 33521