```
                                                      FILED
                                                  U.S. DISTRICT COURT
                                              EASTERN DISTRICT ARKANSAS
```

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS        FEB 2 3 2026
AT LITTLE ROCK

TAMMY H. DOWNS, CLERK
By:_____
                                                              DEP CLERK

| | |
|---|---|
| MARCUS O. MILLSAP, ) | |
| ) | |
| Movant, ) | USDC Case No. 4:26-cv-____ |
| ) | |
| v. ) | |
| ) | USDC Case No. 4:17-cr-00293-45 |
| UNITED STATES OF AMERICA, ) | |
| ) | Hon. Brian S. Miller |
| Respondent. ) | United States District Judge |

## DECLARATION OF MARCUS O. MILLSAP IN SUPPORT OF MOTION TO VACATE, SET ASIDE OR CORRECT A FEDERAL SENTENCE OR CONVICTION PURSUANT TO 28 U.S.C. §2255 (EXHIBIT #1)

I, Marcus O. Millsap, being competent to make this declaration and having personal knowledge of the matters stated herein, declare pursuant to 28 U.S.C. §1746:

1. I am the same Marcus O. Millsap who was the defendant in the above entitled criminal case, tried before this court, and who is movant in the proceeding under 28 U.S.C. §2255 which is being instituted by the motion this declaration supports.

2. I was initially represented by Hugh Laws, who also represented me in related state proceedings. On March 18, 2019, Lee Curry joined the defense, and he and Mr. Laws represented me until September 2, 2020, when Mr. Laws withdrew. On October 6, 2020, Lloyd W. Kitchens, III, joined the defense, and he and Mr. Curry continued to represent me for the remainder of the proceedings in this Court.

3. On direct appeal to the United States Court of Appeals for the Eighth Circuit, I was represented by Michael Kiel Kaiser.

4. During the pretrial phase, my attorneys never made a specific recommendation as to whether I should plead guilty or proceed to trial. As a result, I felt compelled to make that decision on my own, while under significant stress and without adequate professional guidance. My attorneys estimated that I had a "50/50" chance of prevailing at trial and conveyed the impression that the prosecution's case against me was not strong.

5. My attorneys advised me that I had a "safety net" in the form of a strong appellate issue regarding the Interstate Agreement on Detainers Act (IADA). I was led to believe that the government had violated the 120-day deadline and that this issue would protect me if I lost at trial, as the appellate court would reverse the lower court. Had I known this "safety net" lacked merit because my custody was obtained via a writ of *habeas corpus ad prosequendum* rather than a detainer, I would have been more motivated to accept a plea agreement to limit my sentence exposure.

6. I asked my former counsel whether the evidence from my related state case and fact of my prior state convictions would be admissible if I proceed to trial in this case. They never gave me a straight answer.

7. For most of the pretrial stage of these proceedings, I believed that I had been charged with attempted murder. My former counsel did not explain that I was actually charged with aiding and abetting attempted murder in aid of racketeering.

8. Had counsel explained the actual charge and its constituent elements, I would have been far more motivated to plead guilty.

9. Throughout the pre-trial stage of this case, my former counsel informed me that the prosecution had extended several plea offers. However, counsel never permitted me to review any written plea agreement and never provided meaningful advice regarding whether acceptance of any such offer would be in my best interest.

10. I recall that, shortly before trial, the prosecution extended what was described to me as a "final" plea offer pursuant to Rule 11(c)(1)(C), calling for a sentence in the range of fifteen to twenty years. Mr. Kitchens visited me early in the morning to convey this purported "final" offer. I responded that I was prepared at that time to accept a Rule 11(c)(1)(C) plea providing for a 210-month sentence, with the understanding that I would receive credit for time served. Mr. Kitchens informed me that the prosecution would not accept that counter-proposal. He did not tell me whether he conveyed my

counter-proposal to the prosecution.

11. Had my former counsel advised me that it was in my best interest to accept the Rule 11(c)(1)(C) plea offer providing for a sentence of fifteen to twenty years, I would have accepted that offer and pleaded guilty rather than proceeding to trial.

12. Had my former counsel conveyed that the prosecution intended and would be permitted to use evidence from my state prosecution in my federal trial, I would have been strongly inclined to accept the prosecution's plea offer.

13. Although I am not proud of having been incarcerated on prior occasions in Arkansas, I want the Court to know that in each of those cases I pleaded guilty because I understood the charges against me and knew that I was guilty. I am confident that I would have done the same in this case had my former counsel provided me with the information necessary to understand the charges I faced and had counsel provided accurate advice regarding the strength of the prosecution's case,

including evidence that counsel should have known was readily available and admissible. I am further confident that I would have accepted a plea had my former counsel not misadvised me that I effectively possessed a "get-out-of-jail-free" appellate issue based on the IADA.

14. Had my former counsel informed me that hearsay and double hearsay—essentially that a witness who did not know me could testify at trial about what someone else claimed I had said—would be admitted as evidence against me, I would not have proceeded to trial and would have accepted the Rule 11(c)(1)(C) plea.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 18TH day of February, 2026.

*Marcus O. Millsap*
Mr. Marcus O. Millsap, *Pro Se*
Reg. No. 32531-009
USP Coleman I
P.O. Box 1033
Coleman, FL 33521